[Civ. No. 19684.   Second Dist., Div. Two.   Nov. 17, 1953.]

LETTA M. BRIGGS, Appellant, v. WALTER M. BRIGGS, Respondent.

Milton M. Cohen, Jr., for Appellant.

Benjamin J. Goodman for Respondent.

MOORE, P. J.—Appellant is payee and respondent is the maker of a promissory note given pursuant to a property settlement between them.   The note provides for monthly payments by the maker and gives the payee the right to accelerate the payment of the unpaid balance due if the maker

should fail to make an installment payment within 90 days after its due date.

Respondent made five monthly payments, then failed to make the next payment which became due December 15, 1950, and also the three succeeding payments. On March 19, 1951, appellant gave notice of her intention to declare a default in the payment of installments and demanded payment of the balance due. Respondent refused to pay but tendered all the past due installments. Such tender was refused.

Appellant commenced this action to collect on the instrument. Respondent answered and on the day of the trial, with the permission of the court, filed a "supplement to fifth separate defense of defendant." Judgment was for respondent based on his fifth separate defense, and the findings thereon are substantially as follows: that two properties were conveyed to appellant in the property settlement including the home; that both were covered with fire insurance and besides, the home was covered by a policy of public liability insurance; that at the time of the conveyance to appellant, the unearned premiums on such policies aggregated $103.35 which by the settlement became respondent's property; that such sum was a valid offset against the $90 due appellant by Mr. Briggs on December 15, 1950, leaving a balance in her hands to the credit of respondent in the sum of $13.35; that in January, 1951, at a time when appellant acknowledged that the $90 check due and payable on December 15, 1950, had not been delivered, and when she had not been given notice of respondent's default on the last mentioned day, she caused her agent to transmit to respondent her check for $36.81 in payment of a portion of respondent's refund on one of the insurance policies; that respondent and appellant informed the latter's agent that $58.70 and $7.84 were due upon the refunds of other policies and respondent requested same to be forwarded to him which had not been done.

Inasmuch as the reviewing court is bound by the rule that all conflicts must be resolved in favor of respondent and all legitimate and reasonable inferences be indulged to uphold the conclusions of the trial court (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]), the judgment herein is secure against the attack of insufficiency of the evidence if there is substantial evidence to support the findings.

Respondent presents two versions of the evidence to sustain the finding. (1) The insurance premiums were paid

by a partnership which consisted of appellant and respondent. Prior to the property settlement, the partnership was dissolved and by the provisions of the agreement, all assets of the partnership were transferred to respondent who now argues that the unearned premiums of the policies were assets of the partnership. The fact that they were not mentioned specifically in the property settlement does not defeat the argument since the agreement states "all assets" and indicates that the listing of items does not limit the "all." Respondent sold his interest in the policies to appellant, but did not receive payment prior to December 15, 1950.

In considering the foregoing as a support for the finding, several problems are presented. The property insured was held by respondent and appellant in joint tenancy and there is no evidence that it belonged to the partnership. The agreement for a property settlement stated that the property in question was community in character. The policies were in the names of the parties as joint tenants. The partnership did not have an insurable interest. Then in the light of those facts, the policies were void, or the partnership was a creditor of the joint tenancy for the cost of the policies. Since the partnership was such creditor, the claim for the cost of the policies was by the property settlement transferred to respondent, but the effect of such settlement was to adjust all differences between appellant and respondent, whether listed or not, if less than $2,500; hence the claim is wiped out. There is evidence that subsequent to the settlement, appellant agreed to pay respondent for the unearned premiums. But how could such evidence aid respondent if no valid claim on his part existed for those premiums? A promise to pay a sincerely contested claim might become a contract. But such rule is not applicable here by reason of (a) appellant's promise to pay the total sum claimed and (b) the prior settlement.

(2) The second explanation of respondent omits any consideration of the partnership and argues that he had the policies; that any claim thereto by appellant is waived by the property settlement whereby all listed items and all unlisted items less than $2,500 in value were allocated to the parties, and that respondent sold the policies to appellant as he argued in (1) above. The problem here is how did respondent get the policies? The policies covered the property held by the parties as joint tenants. Therefore, the policies belonged to the joint tenants. When the property was converted to separate property of appellant, the title

to the policies remained *in statu quo* (Ins. Code, § 305) and respondent as one of the joint tenants had a claim for only one half of the unearned premiums. The value of his share was not enough to offset the $90 he owed appellant on the promissory note involved herein. He had merely a claim to one half of the $103.35 due as unearned premiums. Even if that sum had been collected by appellant, her debt to respondent on account thereof would have been only $51.67 which could not have been set off against the $90 installment due her on the promissory note. Hence, respondent's setoff was a myth and judgment for the entire amount of the note should have been entered in favor of appellant.

It is, therefore, ordered that the judgment be and is reversed and the court below is instructed to prepare findings in accordance herewith and to enter judgment in favor of plaintiff in the amount of the principal of the note less the payments already made, including interest and a reasonable attorney's fee and costs.

Fox, J., concurred.

Mr. Justice McComb did not participate in the foregoing opinion.

A petition for a rehearing was denied December 4, 1953, and respondent's petition for a hearing by the Supreme Court was denied January 13, 1954. Schauer, J., was of the opinion that the petition should be granted.